297 Ga. 184
FINAL COPY

S15A0139. DYAL v. THE STATE.

BLACKWELL, Justice.

Appellant Lewis Dyal was tried by a Berrien County jury and convicted of murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony, all in connection with the fatal shooting of his adult son, Jonathan. Appellant now contends that the trial court erred with respect to several evidentiary matters, when it charged the jury about evidence of prior difficulties between Appellant and his son, when it used a certain verdict form, and when it sentenced him for both murder and aggravated assault. We agree that the aggravated assault should have been merged into the murder, and we therefore vacate the conviction and sentence for aggravated assault. We otherwise see no error, however, and we affirm the judgment of conviction and sentences as to murder and unlawful possession of a firearm.[1]

---

[1] Appellant's son was killed on December 17, 2007. Appellant was indicted on November 17, 2008 and charged with malice murder, felony murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. Appellant was tried beginning on March 24, 2009, and the jury returned its verdict the following day. The jury did not reach a verdict as to felony murder, but it found Appellant guilty of all the other charges. The trial court sentenced Appellant to imprisonment for life for malice murder, a

1. Viewed in the light most favorable to the verdict, the evidence shows that Appellant lived near Alapaha with his wife and Jonathan. Appellant had a strained relationship with Jonathan, and there had been several incidents of violence between them, including an altercation in 2000 that resulted in Appellant having to undergo facial reconstructive surgery.

On the evening of December 17, 2007, Appellant carried a handgun into the kitchen of the family home, where his wife and son were seated at a table. Appellant's wife had not heard Appellant and her son arguing that evening, and she did not know why Appellant was carrying his handgun. Appellant pointed the gun at both his wife and son, put his hand on his wife's shoulder in a way that made her feel like he wanted her to stay seated, and shot Jonathan in the head. When Appellant's wife reached out to Jonathan, Appellant said, "[l]eave him alone, you stupid b____, he's dead. . . . You want to be the next one?"

---

concurrent term of imprisonment for ten years for aggravated assault, and a consecutive term of imprisonment for five years for unlawful possession of a firearm. On May 7, 2009, Appellant requested leave to file an out-of-time motion for new trial, the trial court granted that request on June 11, 2009, Appellant filed a motion for new trial on the same day, and he amended that motion on October 17, 2013. The trial court denied Appellant's motion for new trial on January 14, 2014, and Appellant timely filed a notice of appeal on February 3, 2014. The case was docketed in this Court for the January 2015 term and orally argued on January 5, 2015.

When police officers arrived at the home soon thereafter, they noted a strong odor of alcohol on Appellant's breath, that his speech was slurred, and that his motor skills were impaired. Appellant told the officers that he killed his son because "he was going to beat my tail." At trial, Appellant presented a justification defense, but it was rejected by the jury.

Appellant does not dispute that the evidence is sufficient to show that he committed each of the crimes of which he was convicted, but he does assert that the trial court erred when it sentenced him for both malice murder and aggravated assault. Georgia law proscribes multiple convictions where "[o]ne crime is included in the other." OCGA § 16-1-7 (a) (1). And a crime is included in another crime when, among other things, "[i]t is established by proof of the same or less than all the facts . . . required to establish [the other] crime." OCGA § 16-1-6 (1). Here, the indictment charged Appellant with malice murder for fatally shooting his son in the head, and it charged Appellant with aggravated assault for pointing the gun at his son and pulling the trigger. Appellant was charged with committing a single assault against his son, and it was this assault that resulted in his son's death. As a result, the aggravated assault with a deadly weapon did not require proof of any fact not also required to be proved for the

3

malice murder. Consequently, the aggravated assault should have been merged into the malice murder, and the sentence imposed for aggravated assault must be vacated. See Culpepper v. State, 289 Ga. 736, 738 (2) (a) (715 SE2d 155) (2011); compare Willingham v. State, 281 Ga. 577, 579 (642 SE2d 43) (2007) (aggravated assault did not merge with murder where the indictment alleged that defendant assaulted victim by placing him in reasonable apprehension of immediately receiving a violent injury because only the aggravated assault count required the State to offer proof of that element). As to the convictions for murder and unlawful possession of a firearm, we conclude that the evidence adduced at trial is legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Appellant was guilty of those crimes. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant claims that the trial court erred when it refused to admit evidence of prior bad acts allegedly committed by Jonathan against third parties that caused Appellant to fear his son.[2] The trial court excluded this evidence

---

[2] In a related enumeration of error, Appellant asserts that the trial court abused its discretion when it directed the redaction of a statement made by Appellant from the recording of a phone conversation between Appellant and law enforcement that took place on the night that Appellant killed his son. Appellant acknowledges that this enumeration of error "is contingent upon" the issue regarding the admissibility of evidence of prior bad acts

4

after finding that Appellant failed to give proper notice under Uniform Superior Court Rule 31.1, which requires that a defendant notify the State ten days before trial of his intention to introduce evidence of specific acts of violence by the victim against third parties.[3] Appellant acknowledges that he failed to provide proper notice, however, and it is well-settled that a trial court has "[broad] discretion in deciding whether to vary the time for filing [under Rule 31.1], and its decision will not be upset absent abuse." Darden v. State, 271 Ga. 449, 450 (2) (519 SE2d 921) (1999) (citation omitted). Here, the record shows that the trial court understood that it had the discretion to admit evidence of prior bad acts committed against third parties by Appellant's son, but it declined to do so after finding that Appellant had no reason for his failure to provide the State with proper notice. Moreover, the untimely notice that Appellant provided to the

committed by Appellant's son against third parties because the portion of the recording that the trial court suggested would have to be redacted was a statement in which Appellant said that his son had been on probation for shooting a deputy and beating up his girlfriend. In any event, the record shows that this recording was never played for the jury, and the trial court never actually redacted any statement as Appellant claims.

[3] We note that this case was tried under our old Evidence Code, which permitted an accused claiming justification to offer evidence of specific acts of violence by the victim against third parties under the rule of Chandler v. State, 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991). We do not decide today whether Chandler retains its viability under the new Evidence Code.

5

State did not include specific information about the alleged prior bad acts as required by Uniform Superior Court Rule 31.6 (B), but it instead merely informed the State that Appellant intended to introduce "evidence of [an unspecified] act [ ] of violence by the victim." As a result, the trial court did not err when it excluded this evidence.[4]

3. Appellant also contends that the trial court erred when it allowed a GBI agent to testify that, while the agent was investigating the 2000 altercation between Appellant and his son that resulted in Appellant having to undergo facial reconstructive surgery, Appellant's son made a written statement claiming that Appellant came in the house "drunk out of his mind" and pointed a gun at

---

[4] It is not altogether clear what this evidence would have been, and this uncertainty is also fatal to Appellant's claim that his trial lawyer was ineffective because her violation of Rule 31.1 resulted in the exclusion of evidence. The only evidence of the victim's prior bad acts against third parties introduced either at the hearing at which the trial court excluded evidence of prior bad acts or at the hearing on Appellant's motion for new trial is that Appellant's son was charged with the 2004 aggravated assault of a Coffee County police officer. But no details of this – or any other – incident were introduced at those hearings, and we can only speculate about what testimony could have been provided by any witnesses to any prior bad acts committed by Appellant's son against third parties. See Johnson v. State, 290 Ga. 382, 386 (2) (d) (721 SE2d 851) (2012) ("[s]peculation is insufficient to establish prejudice under Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)]"). In any event, it was the victim's relationship with *Appellant* that appears to have been historically violent, so Appellant's justification defense was not "defeated" by his inability to present evidence of bad acts allegedly committed by the victim against third parties as he now claims. See Owens v. State, 270 Ga. 199, 201 (2) (509 SE2d 905) (1998) (defendant need not provide the State with notice when he intends to introduce evidence of prior difficulties with the victim to support a claim of justification).

him. Appellant claims that evidence of this written statement should have been excluded under the Confrontation Clause and as hearsay, but he made no objection to the evidence at trial. As a result, this enumeration of error is not preserved for our review. See Walton v. State, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004).[5]

4. Appellant claims that the trial court committed plain error when it approved a verdict form that provided for the jury to consider the charge of voluntary manslaughter only if it found that he was not guilty of malice murder or felony murder. We have already found that "[a] sequential charge requiring the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder is not appropriate where there is evidence that would authorize a charge on voluntary manslaughter." Edge v. State, 261 Ga. 865, 867 (2) (414 SE2d 463) (1992) (emphasis in orginal). But, as Edge explains, this is so because if the jury

---

[5] In any event, the GBI agent's testimony about the written statement provided by Appellant's son was cumulative of the testimony by Appellant's wife about the same 2000 altercation. See Humphrey v. State, 281 Ga. 596, 599 (3) (642 SE2d 23) (2007) (violation of Crawford v. Washington, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004) is harmless where evidence is cumulative of other testimony that was subject to cross-examination).

7

determines that the defendant is not guilty of malice murder, but is guilty of felony murder, the sequential charge would prevent the jury from "consider[ing] evidence of provocation or passion which might authorize a verdict for voluntary manslaughter [instead of felony murder]." Id.; see also OCGA § 16-5-2 (a) (voluntary manslaughter occurs when someone causes the death of another "under circumstances which would otherwise be murder").

But while the verdict form used in this case had the potential to result in a situation such as that addressed in Edge (requiring a reversal of a felony murder conviction),[6] the jury in this case found Appellant guilty of malice murder, not felony murder. And "[b]y finding that [A]ppellant had committed the homicide *with malice*, the jury necessarily found that [he] had committed the homicide without the provocation sufficient to authorize a verdict of guilty of voluntary manslaughter." McGill v. State, 263 Ga. 81, 83 (3) (428 SE2d 341) (1993) (emphasis in original).[7] It was the jury's finding that Appellant killed his

---

[6] We caution yet again that trial courts should not use a sequential verdict form that precludes a jury from considering voluntary manslaughter until after it has reached a verdict on felony murder.

[7] In addition, we note that the trial court charged the jury that, "before [it] would be authorized to return a verdict [finding Appellant] guilty of murder, [it] must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter."

8

son with malice — not the potentially faulty verdict form — that eliminated a determination that Appellant was guilty only of voluntary manslaughter. As a result, this enumeration of error has no merit.[8]

5. Finally, Appellant argues that the trial court erred when it instructed the jury that evidence showing that there had been prior difficulties between him and his son had been admitted "for the sole purpose of illustrating, if it does so illustrate, the state of feeling between the defendant and the alleged victim and the bent of mind and course of conduct on the part of the defendant." Appellant says that references to "bent of mind" and "course of conduct" would have been more appropriate in a charge on how a jury could consider similar transaction evidence. But Appellant did not object to this charge at trial, and in any event, we have held that such a charge was not erroneous at the time Appellant was tried and that it was, in fact, consistent with the pattern jury instruction on prior difficulties at the time. See Jones v. State, 289 Ga. 145, 147 (2) (710 SE2d 127)

---

[8] Similarly, Appellant's claim that his trial lawyer was ineffective because she failed to object to the verdict form must also fail. See Johnson v. State, 295 Ga. 615, 619 (3) (a) (759 SE2d 837) (2014).

(2011).[9] As a result, even if the charge was error, it was not plainly erroneous. See McKibbins v. State, 293 Ga. 843, 854 (7) (750 SE2d 314) (2013).

Judgment affirmed in part and vacated in part. All the Justices concur.

Decided June 1, 2015.

Murder. Berrien Superior Court. Before Judge McClain.

Elizabeth A. Wood, for appellant.

Richard L. Perryman III, District Attorney, Patrick Warren, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.

---

[9] The pattern instruction on prior difficulties now provides, in part, that "[e]vidence of prior difficulties (or lack thereof) between the defendant and the alleged victim . . . has been admitted for the sole purpose of illustrating, if it does, the state of feeling between the defendant and the alleged victim . . . [and] the reasonableness of any alleged fears by defendant or alleged victim." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.34.20 (4th ed.; updated January 2015).